UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ALFRED HATCHETT, JR.,

                  Petitioner,

v.

MICHAEL BURGESS,

                  Respondent.

_____/

Case No. 1:22-cv-822

Honorable Robert J. Jonker

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.     Factual allegations

Petitioner Alfred Hatchett, Jr. is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. On September 13, 2019, following a five-day jury trial in the Wayne County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, one count of second-degree criminal sexual conduct (CSC-II), one count of kidnapping, in violation of Mich. Comp. Laws § 750.349, one count of being a felon in possession of a firearm, in violation of Mich. Comp. Laws § 750.224f, and five counts of use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b.

On September 27, 2019, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 30 to 60 years for each count of CSC-I, 1 to 5 years for CSC-II, 5 to 15 years for kidnapping, and 1-5 years for being a felon in possession of a firearm. Those sentences in turn were to be served consecutively to concurrent terms of 2 years for each felony-firearm conviction. That entire consecutive string would begin upon completion of sentences for which Petitioner was on parole at the time he committed the new offenses. Considering all of Petitioner's sentences, his earliest release date is September 26, 2051, and his maximum discharge date is June 7, 2095. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=198863 (last visited Sept. 27, 2022).

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> This case arises out of defendant's kidnapping and sexual assault of the victim on the night of April 30, 2019. That night, the victim and her sister, Destiny, went to a series of gas stations and party stores near their house. Eventually, Destiny

2

and the victim arrived at Mega Liquor on McNichols at about 11:00 p.m. or 12:00 a.m.

Destiny went inside Mega Liquor while the victim remained in the car. After Destiny went into the store, defendant approached the car. He pulled out a handgun, opened the driver's side door, and got into the car. Defendant drove the car out of the parking lot, parked the car on a dark street, and sexually assaulted the victim inside the car. Defendant fled after the sexual assault, and the police were contacted by the victim's family shortly thereafter. The victim testified in detail about the kidnapping and sexual assault.

*People v. Hatchett*, No. 351289, 2021 WL 1478340, at *1 (Mich. Ct. App. Apr. 15, 2021).

Petitioner directly appealed his convictions to the Michigan Court of Appeals. In the brief Petitioner filed with the assistance of counsel, Petitioner raised an issue regarding the sufficiency of the evidence with regard to one count of CSC-I. By opinion issued April 15, 2021, the court of appeals rejected Petitioner's challenge and affirmed the trial court.

Petitioner attempted to introduce several additional issues by way of a *pro per* motion for reconsideration. The court of appeals denied reconsideration by order entered May 12, 2021. Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court raising all of the issues he had raised in the court of appeals. By order entered November 4, 2021, the supreme court, in lieu of granting leave to appeal, remanded the case back to the court of appeals for consideration of the issues Petitioner had raised in the court of appeals by way of his *pro per* supplemental brief. *People v. Hatchett*, 965 N.W.2d 547 (Mich. 2021).

The court of appeals addressed Petitioner's *pro per* supplemental issues in an opinion issued January 3, 2022. *People v. Hatchett*, No. 351289, 2022 WL 128106 (Mich. Ct. App. Jan. 13, 2022). The court rejected all of Petitioner's challenges and affirmed the trial court. Petitioner then returned to the Michigan Supreme Court with an application for leave to appeal. The supreme court denied leave to appeal by order entered June 28, 2022. *People v. Hatchett*, 975 N.W.2d 466

(Mich. 2022). Petitioner did not file a petition for writ of certiorari to the United States Supreme

Court. (Pet., ECF No. 1, PageID.3.)

On September 1, 2022, Petitioner filed his habeas corpus petition raising seven grounds for

relief, as follows:

I.      Petitioner's convictions must be reversed because the prosecution failed to
        present sufficient evidence to satisfy the due process standard of guilt
        beyond a reasonable doubt.

II.     Petitioner rejected a plea bargain based on erroneous legal advice of counsel
        and was convicted at trial of all offenses and received a much greater
        sentence than offered in the plea bargain.

III.    Petitioner's due process rights [were] violated by the prosecution
        withholding exculpatory evidence.

IV.     Petitioner was denied due process and a fair trial when the trial court refused
        to give the standard addict-informer instruction.

V.      The failure to the prosecution to correct the testimony of the witness which
        he knew to be false denied Petitioner due process of law in violation of the
        Fourteenth Amendment.

VI.     The Petitioner relatedly asserts that trial counsel was ineffective for failing
        to object to the above errors.

VII.    Petitioner was denied the effective assistance of counsel guaranteed by the
        federal constitution where his appellate counsel neglected strong and
        critical issues which must be seen as significant and obvious.

(Pet., ECF No. 1, PageID.5–10, 16–18.)

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions

are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).

An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a

state conviction cannot be granted with respect to any claim that was adjudicated on the merits in

state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

6

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.     Discussion

### A.     Sufficiency of the evidence

On direct appeal, Petitioner's sufficiency challenge related to only one count of CSC-I, the charge that Petitioner had digitally penetrated the victim's vagina. The court of appeals described the relevant testimony as follows:

> [T]he victim testified on direct examination that defendant touched her vagina "[j]ust on the outside" with his finger. Further, on cross examination, the victim testified that defendant made "a poking motion" but agreed with defense counsel that her statement to the police in which she asserted that defendant put his finger in her vagina was inconsistent with her trial testimony. However, on re-direct examination, the prosecution rehabilitated the victim's testimony with the following pertinent exchange:
>
> Q: Okay. Now let's talk about your vagina. And you testified that you had underwear on?
>
> A: Yes.
>
> Q: And did you testify that the poking occurred through the underwear?
>
> A: Yeah, but it was more like -- yeah, it was through the underwear. Do you want me to elaborate what I mean?
>
> Q: Yes.
>
> A: The underwear was going inside my hole, like, it was weird.
>
> Q: What hole was that?
>
> A: My vagina.
>
> Q: And you just said that it went inside your hole?

A: My underwear.

Q: Okay. Was his finger in your underwear?

A: No, it was outside the underwear.

Q: Okay.

A: But it was basically the finger was going through the underwear.

Q: Okay. So how did you [sic] underwear get into your vagina?

A: From the poking.

*People v. Hatchett*, 2021 WL 1478340, at *1–2.

The court of appeals applied the following standard to review Petitioner's claims: "[t]his Court reviews the evidence in the light most favorable to the prosecution to determine whether a rational jury could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. at *2. The court then recounted the elements of the offense, noting that "'penetration' means . . . any . . . intrusion, however slight, of any part of a person's body or of any object into the genital . . . opening[] of another person's body . . . ." *Id*. at *3. The court explained further that the testimony of the victim, standing alone and without corroboration was sufficient to find a defendant guilty. Against that backdrop, the court evaluated the evidence:

> [W]hen viewing the evidence in the light most favorable to the prosecution, the victim's testimony at trial was sufficient evidence to show that defendant was guilty of count one beyond a reasonable doubt. On re-direct examination, the victim testified that defendant made a poking motion with his finger, which caused her underwear to go inside of her "hole." Specifically, the victim testified that "[t]he underwear was going inside my hole," which she clarified meant her vagina. The victim reiterated that her underwear entered her vagina "[f]rom the poking." The clear implication of her testimony is that both her underwear and defendant's finger entered her vagina. That is, the victim's underwear could not have entered her vagina unless defendant's finger did so as well. Such circumstances are sufficient to constitute CSC-I. [citation omitted].

> Further, regardless of whether defendant's finger entered the victim's vagina, the victim's testimony explicitly established that her underwear entered her vagina as a result of defendant's finger, and MCR 750.520a(r) provides that "sexual penetration" includes the intrusion "of any object into the genital . . . opening[ ]."

8

Thus, the intrusion of her underwear into her vagina by defendant's finger constituted "sexual penetration" for the purposes of CSC-I. [citation omitted].

*Id*.

Petitioner's challenge to the state court's sufficiency determination seems to ignore the evidence and the court's reasoning. Petitioner complains that the evidence was purely circumstantial and, thus, required the jury to speculate, not make reasonable inferences. (Pet'r's Br., ECF No. 2, PageID.29–30.) But the evidence regarding penetration was not circumstantial. The victim testified that Petitioner pushed the victim's underwear into her vagina. The jurors were not asked to speculate.

Petitioner then leaps to non-existent DNA test results. (*Id*., PageID.31.) Petitioner complains that the prosecution did not offer for testing swabbed samples from the victim's mouth, toothbrush, or panties. He contends the absence of this evidence somehow proves that his fingers were not near the victim's vagina. (*Id*., PageID.31-33.) Petitioner also seems to suggest that the prosecution's failure to test samples from the victim that might have related to the victim's claim of penile/oral penetration somehow cancels out the victim's testimony that such a penetration occurred.

Petitioner's argument is nonsensical. He attempts to turn the clearly established law regarding sufficiency of the evidence, as set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), on its head. In *Jackson*, the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility

remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the *Jackson* standard—or at least its functional equivalent. The court looked at the elements of the CSC-I offense, specifically penetration, and then considered the evidence regarding penetration in a light most favorable to the prosecution. Petitioner, however, invites the Court to consider the evidence in a light that favors him. The court of appeals' application of the standard was reasonable and consistent with clearly established federal law.[1] Accordingly, Petitioner is not entitled to habeas relief on his sufficiency-of-the-evidence claim.

---

[1] It is noteworthy that Petitioner concedes the sufficiency of the evidence in his argument regarding ineffective assistance of counsel relating to a rejected plea offer. (Pet'r's Br., ECF No. 2, PageID.35, 36) ("There was sufficient evidence to convict defendant of criminal sexual conduct in the first degree under the theory of digital penetration." and "Based on the victim's testimony at trial, this evidence is sufficient to establish digital penetration."). Under Federal Rule of Civil

### B.      Ineffective assistance of counsel regarding the rejected plea offer

Petitioner next argues that his counsel rendered ineffective assistance when counsel advised Petitioner to reject a plea offer that would have resulted in a consecutive sentence string with a minimum of 17 years. According to Petitioner, while the victim was testifying, Petitioner noticed that jurors were shaking their heads and making facial gestures. (Pet'r's Br., ECF No. 2, PageID.37; Pet'r's Aff., ECF No. 2-1, PageID.66.) For that reason, when the jury left the courtroom for a recess, Petitioner asked his counsel to inform the prosecutor that he would accept a plea offer. (*Id*.) The prosecutor returned with an offer of 15 to 30 years on one count of CSC-I, consecutive to 2 years on one count of felony-firearm, for guilty pleas on those two charges.

Petitioner claims that his counsel then advised him that in her estimation, the jury was "not buying into [the victim's] story of how the sexual assault had occurred . . . ." (Pet'r's Aff., ECF No. 2-1, PageID.66.) Petitioner reports that counsel also failed to advise him of the 25-year minimum sentence he would face if convicted of CSC-I. (*Id*., PageID.66–67.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might

---

Procedure 8, made applicable by Rule 12 of the Rules Governing § 2254 Cases, *Carter v. Mitchell*, 693 F.3d 555, 566 (6th Cir. 2012), "[a] party may state as many separate claims or defense as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges based on ineffective assistance of counsel in the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.

Often, habeas petitioners challenge the assistance of counsel for advising acceptance of a plea offer. Then, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court described the appropriate prejudice analysis where counsel advises rejection of a plea offer:

> [H]ere the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or

both, under the offer's terms would have been less severe than under the judgment
and sentence that in fact were imposed.

*Id.* at 163–64.

The Michigan Court of Appeals expressly applied the *Lafler* standard. *People v. Hatchett*,
No. 351289, 2022 WL 128106, at *2 (Mich. Ct. App. Jan. 13, 2022). The court of appeals
concluded that Petitioner would not have accepted the plea offer for several reasons. First, the
court noted that Petitioner insisted that he was innocent and, therefore, Petitioner could not have
provided the factual foundation to support his plea. *Id.*[2] Second, the court of appeals concluded
that Petitioner's affidavit in support of his plea claim was not credible. For example, Petitioner
claimed that he was unaware of the 25-year mandatory minimum sentence. But the court found
multiple instances in the record where Petitioner was specifically advised of the mandatory
minimum, including during the prosecutor's description of the offer that Petitioner rejected. *Id.* at
*2–3. Additionally, the court reviewed Petitioner's sworn testimony rejecting the plea offer and
found it incompatible with his later self-serving claim that he would have accepted the plea offer.
*Id.* at *3. For that reason, applying *Lafler*, the appellate court determined that if Petitioner's claim
regarding counsel's prediction of the outcome were true, and if that prediction constituted deficient
performance,[3] Petitioner failed to demonstrate the prejudice necessary to establish ineffective
assistance of counsel.

---

[2] The requirement that the court establish a factual basis for a guilty plea is a creature of rule, not
the federal Constitution. While states are free to adopt procedural rules requiring a factual basis as
Michigan has done, *Hatchett*, 2022 WL 128106, at *2, the Federal Constitution does not mandate
them to do so. *See North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970); *Roddy v. Black*, 516 F.2d
1380, 1385 (6th Cir. 1975); *accord Meyers v. Gillis*, 93 F.3d 1147, 1152 (3d Cir. 1996); *United
States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc) (implicitly overruled on other
grounds by *Custis v. United States*, 511 U.S. 485 (1994)). Nonetheless, under state law, if
Petitioner maintained his innocence, the court could not accept his plea.

[3] As the *Lafler* Court noted "an erroneous strategic prediction about the outcome of a trial is not
necessarily deficient performance." *Lafler*, 566 U.S. at 174.

When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

This Court concludes that the Michigan Court of Appeals identified a reasonable argument that counsel did not render ineffective assistance. The appellate court's determination that Petitioner would not have accepted the plea offer is reasonable, well-supported by the record, and entirely consistent with *Strickland* and *Lafler*, the clearly established federal law regarding the effectiveness of counsel's assistance when counsel advises a defendant to reject a plea offer. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### C.    *Brady* violation

Petitioner next argues that the prosecutor suppressed favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that,

14

had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682(1985)); *see also Cone v. Bell*, 556 U.S. 449, 469–70 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

Petitioner claimed on appeal, and now claims in this Court, that the prosecutor withheld DNA swabs of the victim's mouth, chest, and vagina and Petitioner's penis and finger. The court of appeals reviewed the three components of a *Brady* violation and concluded that Petitioner had failed to demonstrate that the prosecutor had suppressed any evidence or that the purportedly suppressed evidence was favorable to Petitioner:

> Defendant offers no proof that the prosecutor—or any other agent of government—possessed such DNA evidence referenced by defendant or that this hypothetical evidence would have been favorable to him. It is purely speculative and is not even remotely implied by any testimony or other evidence in the record.

*Hatchett*, 2022 WL 128106, at *3.

Nothing in Petitioner's argument supports the claim that the actual swabs were suppressed. The true focus of Petitioner's argument is that the swabs were not tested. (Pet'r's Br., ECF No. 2, PageID.44.) The Michigan State Police Lab Analyst testified that only the swab of the victim's breasts was tested. (*Id.*) Petitioner interprets the failure of the police and the prosecutor to test the other swabs as a "suppression" of the DNA results and, thus, a *Brady* violation. But, "the prosecution did not have a constitutional duty to perform any particular tests on the [evidence.]" *Vercruysse v. Morrison*, No. 20-1928, 2020 WL 8921409, at *2 (6th Cir. Dec. 7, 2020) (citing *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988)). Thus, the court of appeals' rejection of Petitioner's *Brady* claim is neither contrary to, nor an unreasonable application of, clearly established federal law, and Petitioner is not entitled to habeas relief on the claim.

### D.        Addict-informer jury instruction

Petitioner also contends that his trial was rendered fundamentally unfair because the trial court did not read the addict-informer instruction. Petitioner also notes that counsel rendered ineffective assistance because she failed to request it.

Michigan Model Criminal Jury Instruction 5.7, titled "Addict-Informer," offers a special caution to the jury about testimony provided by an informer where the evidence shows the informer was addicted to a drug. *Hatchett*, 2022 WL 128106, at *4. The court of appeals doubted that the victim of the crime here was an "informer" as contemplated by the instruction. *Id*.[4] Moreover, the court of appeals concluded that there was no evidence that the victim was a drug addict. *Id*. But even if the victim were an addict and an informer, the court of appeals determined the instruction was not appropriate because the information the victim provided was corroborated. *Id*.

The state court's determination that the instruction was not appropriate as a matter of state law is binding on this Court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67–68. Accordingly, at least as a matter of state law, it was not error

---

[4] The court of appeals seems to suggest that there is a difference between a victim reporting a crime and an informer. That distinction is recognized in other contexts. *See, e.g., United States v. Swihart*, 554 F.2d 264, 269 (6th Cir. 1977) (finding, in the context of evaluating a search warrant affidavit, that where the person providing information to the police is not a professional informant or an unidentified informant, but is a victim of the crime, "the danger of casual rumor or irresponsible conjecture is substantially diminished . . ."); *Bellamy v. Unicoi Cnty. Tenn*., No. 90-5943, 1991 WL 73234, at *3 (6th Cir. May 8, 1991) (stating "Sabo was not so much an 'informant,' as that term is referenced in cases such as *Gates*, as she was a victim reporting a crime to the police.").

for counsel to not request the instruction nor was it error for the trial court to not read the instruction.

It is, perhaps, conceivable that an instruction that is properly given or properly refused under state law might still so infect the entire trial with unfairness that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). *See also Estelle*, 502 U.S. at 75 (jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this burden. He has not shown that clearly established federal law requires the giving of an addict-informer instruction. *See, e.g., Lacy v. Cheeks*, No. 2:14-cv-11120, 2022 WL 868421, at *10 (E.D. Mich. Mar. 23, 2022) ("[N]o 'clearly established federal law as determined by the Supreme Court,' requires the giving of such a specific [addict-informer] instruction."); *United States v. Combs*, 369 F.3d 925, 939 (6th Cir. 2004) ("No per se rule, however, requires that an addict-informant instruction be given in all cases involving the testimony of an addict informant."); *Scott v. Mitchell*, 209 F.3d 854, 882–83 (6th Cir. 2000) (concluding that the trial court's general cautionary instruction regarding witness testimony sufficed to protect the defendant's rights).

Because the court of appeals' determination regarding the impropriety of the addict-informer instruction was not contrary to, or an unreasonable application of, clearly established federal law, Petitioner is not entitled to habeas relief on that claim. Moreover, the court of appeals' additional determination that counsel did not render ineffective assistance when she failed to request the instruction is also consistent with federal law. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (stating that "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial.").

E.     **False testimony**

Petitioner claims that he was denied due process by the prosecution's elicitation of false testimony and his counsel's failure to challenge the prosecution's elicitation of false testimony. "[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)); *see also Jackson v. City of Cleveland*, 925 F.3d 793, 826 (6th Cir. 2019) ("*Mooney* made it clear that the Fourteenth Amendment right to due process prohibits a knowing and deliberate use by a state of perjured evidence in order to obtain a conviction.") (citation and internal quotes omitted).

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

*United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted). Petitioner bears the burden of demonstrating that the testimony was actually perjured. *Id.* "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Id.*

Petitioner argues that the victim provided false testimony. To support that argument, Petitioner notes that there were inconsistencies between the testimony of the investigator and the testimony of the victim with regard to whether the victim brushed her teeth before she went to the hospital or at the hospital. (Pet'r's Br., ECF No. 2, PageID.50–51.) Additionally, Petitioner contends that the victim's testimony was not corroborated by other evidence. (*Id.*, PageID.51–52.) Petitioner jumps from that inconsistency and the purported lack of corroboration to the conclusion that the victim's testimony was false. There is no support in law or logic for that leap. At most, Petitioner has shown that the testimony is disputed. That is not enough.

18

Certainly, if Petitioner has not shown that the testimony is false, he cannot show that the prosecutor knew the testimony was false.

The court of appeals reached the same conclusions: Petitioner failed to show the victim's testimony was false and he failed to show that the prosecutor knew the testimony was false. *Hatchett*, 2022 WL 128106, at *5. Those determinations are entirely consistent with, and reasonable applications of, clearly established federal law. Petitioner is, therefore, not entitled to habeas relief on his false evidence claim. And his related claim that counsel was ineffective for not raising the false evidence claim is likewise without merit. *Coley*, 706 F.3d at 752 (stating that "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial.").

### F.    Ineffective assistance of trial counsel

Petitioner's sixth habeas ground, as stated in the petition, complains that trial counsel did not raise habeas grounds I through V in the trial court. As detailed above, each ground lacks merit; therefore, it was neither professionally unreasonable nor prejudicial if trial counsel failed to raise them.

Petitioner's brief, however, expands his ineffective assistance claim beyond counsel's failure to raise habeas grounds I through V. (Pet'r's Br., ECF No. 2, PageID.53–56.) For example, Petitioner claims his counsel rendered ineffective assistance when she refused Petitioner's request to object to the victim's testimony regarding penetration because there was no DNA evidence to corroborate the testimony. Petitioner does not explain what the ground of that objection might be.

Counsel's refusal to voice an objection was eminently reasonable. Under Michigan law, in prosecutions for criminal sexual conduct, "[t]he testimony of a victim need not be corroborated . . . ." Mich. Comp. Laws § 750.520h.

Petitioner also complains that counsel did not object to the prosecution's presentation of a 30-minute redacted surveillance video from the liquor store that showed Petitioner, wielding a gun,

19

hopping into the driver's seat of the car in which the victim was sitting, and driving away. Petitioner does not deny that he approached the car wielding a gun, hopped into the car, and drove it away. Rather, he suggests that an unredacted video would have prevented the jurors from getting a false impression of what Petitioner's true intentions were when he approached the car wielding a gun, hopped into the car, and drove it away. Petitioner presents no clue how the unredacted video would have clarified his intentions. Therefore, the Court concludes that Petitioner has failed to show that counsel's failure to object to the prosecutor's redaction was professionally unreasonable or prejudicial.

Petitioner also reports that he wanted to testify to tell his story—a story that he outlines in an affidavit that he filed in the Michigan Court of Appeals and in this Court (Pet'r's Aff., ECF No. 2-1, PageID.64–68), but counsel advised Petitioner against testifying. Petitioner's version of the events varied from the victim's in several particulars. Petitioner reports that after he jumped into the car with the gun, he and the victim figured out that they had encountered each other before when Petitioner had come to the victim's rescue in a dispute between the victim and the manager of a different liquor store. Petitioner drove the car away with the victim's consent, so that he could return home out of the rain. On the way, however, the victim directed Petitioner to stop next to some apartments. Petitioner laid the gun on the dashboard, pulled out a bag of powdered cocaine, and began to ingest it. He shared the cocaine with the victim. She then lifted her shirt, and he began to lick her breasts. Petitioner makes no mention of the digital/vaginal penetration or the penile/oral penetration. He does not acknowledge or deny those penetrations, he simply notes that there was no DNA evidence to corroborate them.

The Michigan Court of Appeals determined that Petitioner's affidavit was not credible. *Hatchett*, 2022 WL 128106, at *5 ("We decline to accord his affidavit credence here . . . ."). That

determination appears to be reasonable. For counsel to advise Petitioner to forego telling an incredible story on the stand is not professionally unreasonable.

Petitioner also contends that counsel rendered ineffective assistance because she refused to advise the victim during cross-examination that the penalty for perjury in a CSC-I trial was 1 year to life in prison. Advising a witness of the penalty for perjury is not a *per se* due process violation, *see, e.g., United States v. Barrow*, 118 F.3d 482, 494 (6th Cir. 1997), but it is dangerous territory, *see People v. Pena*, 175 N.W.2d 767, 768 (Mich. 1970) (holding that intimidating a witness with a warning of life imprisonment for perjury is "indefensible"). Under the circumstances here, where counsel had no prior testimony or statements that might support counsel's expectation that the witness was not telling the truth or would not tell the truth, the warning urged by Petitioner appears to be an intimidation tactic. Therefore, counsel's decision to not issue such a warning is not professionally unreasonable.

Because Petitioner has failed to establish that counsel's conduct was professionally unreasonable, he cannot show that the court of appeals' rejection of his ineffective assistance claims was contrary to, or an unreasonable application of, *Strickland*. Accordingly, he is not entitled to habeas relief.

### G.  Ineffective assistance of appellate counsel

Finally, Petitioner claims that his appellate counsel failed to render effective assistance because he failed to raise the issues set forth in habeas grounds II through VI. The *Strickland* test applies to claims that appellate counsel rendered ineffective assistance; but the scope of professionally reasonable conduct is expanded in the appellate context.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v.*

*Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 288.

In Petitioner's case, the Court need not weigh the relative merits of the claims appellate counsel failed to raise against those that were raised, because all of the claims appellate counsel failed to raise are meritless. Failure to raise a meritless argument is never ineffective assistance of counsel. *Coley*, 706 F.3d at 752 (stating that "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."). Therefore, Petitioner has failed to show that the state appellate court's rejection of his claim regarding appellate counsel's assistance is contrary to, or an unreasonable application of, clearly established federal law. Petitioner is, once again, not entitled to habeas relief.

## IV.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth

by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:  October 13, 2022                              /s/ Robert J. Jonker
                                                                        Robert J. Jonker
                                                                        United States District Judge

23